**M.C. JEFFERS, Al Porter, Evangeline Brown, Clyde Collins, Earl Foster, The Rev. Ellihue Gaylord, Shirley M. Harvell, Linda Shelby, J.C. Jeffries, Joseph Perry, Clinton Richardson, T.E. Patterson, Earnest Simpson, Brian Smith, and Charlie Statewright, on behalf of Themselves and all Others Similarly Situated, Plaintiffs,**

**v.**

**Jim Guy TUCKER, In His Official Capacity as Governor of Arkansas and Chairman of the Arkansas Board of Apportionment; W.J. McCuen, In His Official Capacity as Secretary of State of Arkansas and Member of the Arkansas Board of Apportionment; and Winston Bryant, In His Official Capacity as Attorney General of Arkansas and Member of the Arkansas Board of Apportionment, Defendants.**

No. H–C–89–004.

United States District Court,
E.D. Arkansas, E.D.

Aug. 11, 1993.

Dayna L. Cunningham, Julius L. Chambers, Sherrilyn Ifill, NAACP Legal Defense Fund, Inc., New York City.

Don E. Glover, Dermott, AR.

Perlesta A. Hollingsworth, Hollingsworth Law Firm, P.A., Little Rock, AR.

Olly Neal Jr., Marianna, AR.

L.T. Simes II, Simes & Simes, West Helena, AR.

Heather Patrice Hogrobrooks, Marianna, AR.

Tim C. Humphries, Atty. General's Office, Little Rock, AR.

Field Kindley Wasson Jr., Chief Legal Counsel, Office of the Governor, Little Rock, AR.

Before RICHARD S. ARNOLD, Chief Circuit Judge, EISELE, Senior District Judge, and HOWARD, District Judge.

RICHARD S. ARNOLD, Chief Circuit Judge.

The question before us is whether we may increase the lodestar portion of the attorneys' fees previously awarded so that it reflects the plaintiffs' attorneys' risk of loss for undertaking the case on a contingent basis. In *Jeffers v. Clinton*, 776 F.Supp. 465, 473–74 (E.D.Ark.1991), after setting the attorneys' lodestar—that is, the product of reasonable hours expended times a reasonable hourly rate—we granted a 50 per cent. enhancement to compensate the attorneys for their contingency risk. We granted a partial stay of that order on December 6, 1991. The Supreme Court ruled in *City of Burlington v. Dague,* —— U.S. ——, —— – ——, 112 S.Ct. 2638, 2643–44, 120 L.Ed.2d 449 (1992), that enhancement of the lodestar for contingency is not permitted under federal fee-shifting statutes. Applying *Dague* to this case, the Court of Appeals has now vacated the enhancement of the lodestar and remanded to us for further proceedings consistent with its opinion. *Jeffers v. Clinton*, 992 F.2d 826, 830–31 (8th Cir.1993).

The plaintiffs' attorneys do not claim that *Dague* allows them to keep their previous contingency enhancement. Rather, recognizing that the lodestar may no longer be enhanced, they urge us to recalculate the lodestar to reflect their contingent risk. This is the question that the Court of Appeals has remanded. In *Dague*, the Supreme Court said:

> The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so.

*Dague,* —— U.S. at ——, 112 S.Ct. at 2641. The plaintiffs argue that the above-quoted passage permits us to recalculate their lodestar, because it means that the "contingency factor is an integral part of the determination of the hourly rate." Plaintiffs' Recommenda-

tions Regarding Calculation of Counsel's Hourly Rates to Compensate for the Risk of Contingency in Light of *City of Burlington v. Dague,* at 2. The passage quoted above from *Dague,* however, indicates that the difficulty of winning on the merits is usually already included in an attorney's hourly rate and the number of hours reasonably expended, and thus in the lodestar, because those factors will reflect the attorney's skill and experience. This is why the Court said in *Dague* that "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar." *Dague,* —— U.S. at ——, 112 S.Ct. at 2641.

We have already taken into account the considerable experience and skill of the attorneys in this case when calculating their fees, and we implicitly recognized the difficulty of proving the merits, calling this a "mammoth case," recognizing the necessity for considerable "expertise, energy, and resources," and consequently permitting out-of-state hourly rates for the out-of-state lawyers. *Jeffers,* 776 F.Supp. at 469–70. In doing so, we have, under *Dague,* already "subsumed" the contingency factor in the lodestar. To increase the lodestar further in this case would be, in our view, the very double-counting that *Dague* seeks to avoid. —— U.S. at ——, 112 S.Ct. at 2641. We might reach a different result if we had not considered "whether the lodestar award adequately reflected the difficulty of establishing the merits" as manifested in the skill of the attorneys. See *Kientzy v. McDonnell Douglas Corp.,* 990 F.2d 1051, 1062–63 (8th Cir. 1993) (remanding, in light of *Dague,* for determination whether the difficulty of establishing the merits was considered in determining the lodestar and authorizing recalculation of the lodestar if this factor was not considered).

We also note that if, after *Dague,* the hourly rates that contingency-fee attorneys charge in some communities no longer adequately reflect their skill and experience and the difficulty of establishing the merits (because they have been relying, in part, on enhancements to do this), we may well see a rise in the hourly rates "charged" by contingency-fee attorneys. If so, we might expect to see, eventually, a corresponding increase in the lodestar those attorneys are awarded. For, as the Court recognizes, the "market treatment" of fee-shifting cases reacts to the Court's own decrees. *Dague,* —— U.S. at ——, 112 S.Ct. at 2642. But calculation of the appropriate lodestar amount based on a possible future rise in the reasonable hourly rates of the relevant community of skilled and experienced civil-rights or voting-rights attorneys is a different case. We are bound by the rate in the relevant community when we decided this case. The plaintiffs' request that the lodestar be recomputed to take into account contingency risk must be denied.

An amended judgment is being entered in accordance with this opinion.

It is so ordered.

### AMENDED JUDGMENT

That portion of our judgment of October 24, 1991, 776 F.Supp. 465 (E.D.Ark.1991), as amended on April 2, 1992, directing the defendants to pay plaintiffs' counsel an enhancement of $308,745.00, is hereby deleted.

Plaintiffs' lawyers' request for an enhancement of the lodestar amount of their fees is denied in accordance with our reconsideration of the issue, as ordered by the Court of Appeals. *Jeffers v. Clinton,* 992 F.2d 826, 830–31 (8th Cir.1993). Accordingly, the judgment of October 24, 1991, is reduced by the amount of $308,745.00.

This substituted judgment, which is set forth on a separate document in accordance with Fed.R.Civ.P. 58, is the final judgment of this Court with respect to fees and costs incurred in the pre–1990–census aspect of the case. The Clerk of this Court is directed to enter it on the docket in accordance with Fed.R.Civ.P. 79.

It is so ordered.