# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3196
_____

Lukeus Scott

*Plaintiff - Appellant*

v.

Key Energy Services, Inc., doing business as Hydra-Walk, Inc.; Hydra-Walk, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Bismarck
_____

Submitted: October 21, 2020
Filed: March 10, 2021
_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

After sustaining injuries in an on-the-job accident in 2013, Appellant Lukeus Scott asserted products liability and negligence claims against his former employer, Key Energy Services (Key Energy) and Hydra-Walk, Inc., the company that manufactured the equipment that caused Scott's injuries. Defendants moved for summary judgment on the basis that Scott's claims were barred by the workers' compensation exclusive remedy rule because, after a merger between Key Energy

and Hydra-Walk, Inc., Key Energy was the sole surviving entity and Key Energy complied with its obligations under the North Dakota Workers' Compensation Act so as to avail itself of the exclusive remedy rule. The district court[1] granted summary judgment, and Scott now appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Key Energy is a company that provides oil and gas pipeline maintenance. In providing its maintenance services to oil and gas pipeline companies, Key Energy utilizes a Hydra-Walk system, a pipe-handling system that allows the operator of the apparatus to pick up and lay down pipe. Hydra-Walk system units were manufactured by Hydra-Walk, Inc. In 2008, five years before Scott sustained his on-the-job injuries, Hydra-Walk, Inc. merged with Key Energy; Key Energy emerged as the surviving entity, while Hydra-Walk, Inc. ceased to exist. As part of the merger, Key Energy became owner of the Hydra-Walk system patents and the Hydra-Walk equipment formerly belonging to Hydra-Walk, Inc. Key Energy did not continue to manufacture any new Hydra-Walk units, instead renting out the existing equipment, along with the system operators, to its customers.

On June 12, 2013, Key Energy hired Scott as a Hydra-Walk system operator. On June 24, 2013, Scott suffered an on-the-job injury when the Hydra-Walk system he was operating became unstable and overturned, crushing him. Scott suffered injuries to his spine, right hand, legs, and internal organs. Scott thereafter sought workers' compensation benefits from Key Energy, and over a five-year period, Scott accepted benefits totaling $341,537.13.

On April 9, 2018, Scott initiated this action, asserting claims of products liability and negligence against Key Energy and Hydra-Walk, Inc. Scott asserted

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

that Hydra-Walk, Inc.'s system was defective and unreasonably dangerous, caused his injuries, and that Key Energy, as the successor to Hydra-Walk, Inc., assumed all liability that would be attributable to Hydra-Walk, Inc. for the design, manufacture, sale, and leasing of the system. Defendants filed a motion for summary judgment, arguing that Key Energy was entitled to statutory immunity from Scott's suit based on North Dakota's workers' compensation exclusive remedy rule, which bars claims or recovery outside of the workers' compensation fund. The district court granted the motion, concluding that Scott's claims were barred by the exclusive remedy rule. In reaching this conclusion, the district court declined to apply what is known as the "dual capacity" exception to the exclusive remedy rule, which allows an employee to pursue tort claims against his employer if the employer has second capacity obligations in addition to and independent of its primary capacity as employer. This appeal follows, with Scott asserting that the district court erred in applying the exclusive remedy rule to bar his claims.

## II.

Scott appeals the district court's grant of summary judgment, specifically arguing that (1) Hydra-Walk, Inc., as the manufacturer of the Hydra-Walk system, is a third-party tortfeasor who is not immune from suit under the exclusive remedy rule; (2) Key Energy is not immune under the exclusive remedy rule because it is the successor to Hydra-Walk, Inc.'s liabilities and Scott seeks damages against Key Energy in this capacity, not in Key Energy's capacity as Scott's employer; and (3) the dual capacity exception to the exclusive remedy rule applies to Scott's claims.[2] We review a district court's grant of summary judgment de novo, viewing

---

[2]Defendants assert that both res judicata and administrative collateral estoppel apply to bar Scott's claims, relying in part on Plains Trucking, LLC v. Cresap, 932 N.W.2d 541, 548-49 (N.D. 2019). There, the North Dakota Supreme Court held that res judicata barred the parties from pursing tort claims stemming from a workplace accident based on the acceptance of workers' compensation benefits. However, the critical inquiry in Plains Trucking was whether the individuals involved in the accident were employees or independent contractors, and acceptance of workers' compensation benefits necessarily acknowledged that the individuals were

the facts in the light most favorable to the non-moving party. <u>Van Dorn v. Hunter</u>, 919 F.3d 541, 544 (8th Cir. 2019). "Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" <u>Id.</u> (citation omitted). The parties agree that North Dakota law governs this action.

North Dakota has adopted a Workers' Compensation Act, which "is a legislatively created compromise for claims between injured workers and their employers. Under the workers' compensation act, an employee generally gives up the right to sue the employer in exchange for sure and certain benefits for all workplace injuries, regardless of fault." <u>Trinity Hosps. v. Mattson</u>, 723 N.W.2d 684, 688 (N.D. 2006) (citation omitted). This compromise is codified within the exclusive remedy rule, which provides:

> If a local or out-of-state employer secured the payment of compensation to that employer's employees by contributing premiums to the fund, the employee . . . do[es] not have a claim for relief against the contributing employer or against any agent, servant, or other employee of the employer for damages for personal injuries, but shall look solely to the fund for compensation.

N.D. Cent. Code § 65-01-08(1). The parties do not dispute that Key Energy complied with its obligations under the Workers' Compensation Act or that Scott accepted benefits; they dispute whether any exceptions to the exclusive remedy rule exist to allow Scott to nevertheless pursue his tort claims against Key Energy.

---

employees. <u>Id.</u> Here, we are tasked with considering whether any exception to the exclusive remedy rule applies, which has not been necessarily acknowledged or conceded by Scott through the acceptance of workers' compensation benefits. As such, we decline to apply res judicata or administrative collateral estoppel to bar his claims.

-4-

As to Scott's first point of error, that the district court failed to recognize that the exclusive remedy rule does not apply to Hydra-Walk, Inc. as a third-party tortfeasor, we find this argument to be without merit. While North Dakota law does allow an injured employee to pursue a claim against a third-party without regard to workers' compensation benefits, see id. § 65-01-09, we are unpersuaded by Scott's assertion that Hydra-Walk, Inc. is a third-party tortfeasor. Scott contends that Hydra-Walk, Inc. was the manufacturer of the Hydra-Walk system and never employed or otherwise had a relationship with Scott. Thus, Scott alleges, Hydra-Walk, Inc. is a third-party tortfeasor against whom he may maintain a claim. But Scott's assertion ignores that a merger occurred between Key Energy and Hydra-Walk, Inc., with Key Energy emerging as the only surviving entity and Hydra-Walk, Inc. ceasing to exist. See id. § 10-19.1-102(2)(b) ("When a merger becomes effective . . . [t]he separate existence of all constituent organizations except the surviving organization ceases."). Because Hydra-Walk, Inc. is an entity that simply no longer exists, Scott cannot maintain a claim against it.

With respect to Scott's allegation that the exclusive remedy rule does not afford protection to Key Energy because, as the successor in interest to Hydra-Walk, Inc., Key Energy assumed all of Hydra-Walk, Inc.'s liabilities, we are similarly unpersuaded. Scott is correct that, under North Dakota law, where two entities merge, the surviving entity succeeds to the liabilities of the company that ceased to exist due to the merger. See Downtowner, Inc. v. Acrometal Prods., Inc., 347 N.W.2d 118, 121 (N.D. 1984). But Scott fails to acknowledge that the North Dakota Supreme Court has never allowed an employee to successfully recover against an employer where the employee was injured by equipment manufactured by another company prior to the company's merger with the employer and the injury occurred post-merger. The dissent contends that in Latendresse v. Preskey, 290 N.W.2d 267 (N.D. 1980), the North Dakota Supreme Court implicitly adopted the dual persona exception, a doctrine wholly distinct from the dual capacity exception discussed below. The dual persona exception, which the dissent notes has been accepted by other jurisdictions, provides an exception to the exclusive remedy rule where the employer is sued as a separate and distinct legal persona from its status as employer.

-5-

According to the dissent, the North Dakota Supreme Court would be willing to apply this exception to allow Scott to pursue his claims against Key Energy because he was injured by the product manufactured by Hydra-Walk, Inc. before the entities merged and Key Energy occupies a distinct legal persona as the entity that assumed Hydra-Walk, Inc.'s liabilities. Although other jurisdictions identified by the dissent may have been receptive to this exception, we find no basis to conclude the North Dakota Supreme Court would decide the issue similarly. The Latendresse court's only discussion of a "distinct separate legal persona" occurred within its reference to a workers' compensation treatise: "Dual capacity requires a distinct separate legal persona, not just a separate theory of liability of the same legal person." Id. at 271 (citation omitted). This passing reference merely acknowledging a treatise's recognition of distinct legal personas is too attenuated to sufficiently demonstrate that the North Dakota Supreme Court would be willing to adopt and apply the dual persona exception to Scott's claims. Without further indication that the North Dakota Supreme Court would be receptive to the application of the exception, we are thus unwilling to apply it, for the first time, to Scott's claims.

Finally, as to Scott's contention that the dual capacity doctrine applies as an exception to the exclusive remedy rule, we disagree because we conclude the North Dakota Supreme Court would not apply this exception to Scott's claims. The North Dakota Supreme Court also discussed this exception in Latendresse, explaining that the exception provides that "an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." Id. at 270 (quoting Douglas v. E & J Gallo Winery, 137 Cal. Rptr. 797, 799 (Cal. Ct. App. 1977), superseded by statute, Cal. Lab. Code § 3602). There, the court considered whether the exception applied to a case where the employee, Latendresse, sued his employer, Preskey, for injuries he sustained while he was installing a steel pin that was manufactured by the employer. Id. at 268. The employee argued that the dual capacity exception should apply to allow him to pursue claims against his employer related to the allegedly unsafe manufacture and production of the pin regardless of

-6-

the exclusive remedy rule because the employer had assumed two capacities: both as the employer and the manufacturer of the pin that caused the injuries. Id. at 269. The court rejected the employee's efforts to apply the exception, stating:

> After careful consideration of the basic requirements of the dual capacity doctrine, as set out by 2a Larson, § 72.80, page 14-112, case law on the subject, and the rationale set out in Schlenk[v. Aerial Contractors, Inc., 268 N.W. 2d 466 (N.D. 1978)] we conclude that the claimant, Latendresse, failed to establish that Preskey came within the dual capacity doctrine, or that Preskey acted in such a manner so as to create an exception to the provisions of the North Dakota Workmen's Compensation Act, Title 65, NDCC. If we were inclined to rule in favor of Latendresse under the dual capacity doctrine as he asserts it, we would have to disregard and do violence to several provisions of the North Dakota Workmen's Compensation Act [regarding the exclusive remedy rule]. We do not believe that justice will permit us to do that.

Id. at 272. Although the North Dakota Supreme Court did not apply the exception, its opinion does not unambiguously reject the application of the exception in all instances. We are thus tasked with determining whether the North Dakota Supreme Court would recognize the dual capacity exception to the exclusive remedy rule in this instance. Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010) ("This court is bound by decisions of the highest state court when interpreting state law. If the highest state court has not decided an issue we must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority." (citation omitted)). We find no cases post-dating Latendresse where the North Dakota Supreme Court revisited, much less applied, the dual capacity exception. Given the dearth of case law on the topic, as well as the North Dakota Supreme Court's unwillingness to "do violence to several provisions of the North Dakota Workmen's Compensation Act" by applying the exception in Latendresse, see 290 N.W.2d at 272, we conclude that the North Dakota Supreme Court would not recognize the dual capacity exception to the exclusive remedy rule in this case. In discussing the exception, the Latendresse court recognized the limits that would likely exist to such an exception, quoting the

observation from Larson's Workers' Compensation Law, a leading workers' compensation treatise, that "[d]ual capacity requires a distinct separate legal persona, not just a separate theory of liability of the same legal person," and that where "the use of the product was a routine and integral part of the employment," application of the exception is "unsound." Id. at 271. Here, the parties do not dispute that use of the Hydra-Walk system was a routine and integral part of Scott's employment as a Hydra-Walk system operator in an oil field equipment yard, which leads us to conclude that the North Dakota Supreme Court would find application of the dual capacity exception "unsound." See id. We therefore decline to apply the exception to Scott's claims. Accordingly, the district court did not err in granting summary judgment in defendants' favor.

### III.

For the foregoing reasons, we affirm.

KELLY, Circuit Judge, dissenting.

I agree there is a dearth of controlling North Dakota case law, but the law that is available favors permitting Scott to pursue his tort claims against Key Energy as the successor to Hydra-Walk's liabilities under the dual persona exception to the exclusive remedy rule. In my view, the court reads Latendresse v. Preskey, 290 N.W.2d 267 (N.D. 1980), too narrowly. In Latendresse, the North Dakota Supreme Court considered whether to adopt the nascent "dual capacity doctrine," which at that point had been adopted by only a few jurisdictions. See id. at 270–72; see also 10 *Larson's Workers' Compensation Law* § 113.01[4] (Rev. Ed. 2020) (describing the "rise and fall" of the dual capacity doctrine). In declining to adopt the doctrine, the North Dakota Supreme Court left open the possibility for an exception to the exclusive remedy rule where an employer is sued in a "distinct separate legal persona." Latendresse, 290 N.W.2d at 271 (cleaned up). This laid the groundwork for the dual persona exception.

The dual capacity doctrine, as initially formulated, provided that "an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." Latendresse, 290 N.W.2d at 270 (quoting Douglas v. E. & J. Gallo Winery, 137 Cal. Rptr. 797, 799 (Cal. Ct. App. 1977), superseded by statute, Cal. Lab. Code § 3602). Under the doctrine, a plaintiff could "state a cause of action based on manufacturer's liability even though the defendant is also the employer and the alleged injuries took place in the course of employment *provided that the product involved is manufactured by [sic] employer for sale to the public rather than for sole use of the employer*." Id. (emphasis added); see, e.g., Douglas, 137 Cal. Rptr. at 801; Mercer v. Uniroyal, Inc., 361 N.E.2d 492, 495–96 (Ohio Ct. App. 1976), abrogated by Schump v. Firestone Tire & Rubber Co., 541 N.E.2d 1040, 1044 (Ohio 1989). In other words, whether an employee could sue their employer for a products liability claim in addition to seeking a remedy through workers' compensation turned on whether the *product* was manufactured solely for the employer's use or for sale to the general public. See 10 *Larson's Workers' Compensation Law* § 113.01[4]. Pursuant to this doctrine, Scott would be able to maintain his suit against Key Energy because the product involved in his injury, the Hydra-Walk system, was manufactured for sale to the public and Key Energy continues to rent it out to customers. Contra Latendresse, 290 N.W.2d at 270–71 (holding that even if North Dakota were to adopt the dual capacity doctrine it would not apply to Latendresse's claim because there was "no evidence that the [product] . . . involved in the accident was manufactured for the public or a use other than the specific purpose for which it was used in the [instant] case").

However, the North Dakota Supreme Court did not formally adopt the dual capacity doctrine in Latendresse. See id. at 271–72. By that time, a growing chorus of courts and commentators was rejecting the doctrine, reasoning that its distinction between products made solely for a manufacturer's use and products made for wider distribution "made no sense." 10 *Larson's Workers' Compensation Law* § 113.01[4]. Instead, "what mattered was that, *as to [the injured] employee*, the

product was manufactured as an adjunct to the business, and furnished to him solely as an employee, not as a member of the consuming public." Id. (emphasis in original); see id. § 113.03 (criticizing the dual capacity doctrine's application to products liability cases). The Latendresse court echoed that criticism, which described the dual capacity doctrine as "unsound" because it "overlook[ed] the simple fact that the use of [an injuring] product [could be] a routine and integral part of the employment" despite the product's circulation to the public. 290 N.W.2d at 271 (quoting 2a Larson, *The Law of Workmen's Compensation* § 72.80 (1976)). The court did not apply the dual capacity doctrine as advocated by the plaintiff-employee, and it declined to apply an exception to the exclusive remedy rule given the facts of the case. See id. at 272.

Nevertheless, the North Dakota Supreme Court did not foreclose an exception to the exclusive remedy rule, appearing to recognize an alternative to the dual capacity doctrine. In criticizing the doctrine, the court acknowledged the alternative view that when determining whether an employer could be sued despite the availability of workers' compensation, the relevant inquiry was whether the employer had "a distinct separate legal persona, not just a separate theory of liability of the same legal person." Id. at 271 (quoting 2a Larson, *The Law of Workmen's Compensation* § 72.80). This formulation of the doctrine, called the "dual persona doctrine," has overwhelmingly supplanted the dual capacity doctrine in other state jurisdictions, see 10 *Larson's Workers' Compensation Law* § 113.01, and was intended to correct the "looseness and overextension" of the dual capacity doctrine, which some courts had "stretched . . . so far as to destroy employer immunity whenever there was, not a separate legal person, but merely a separate relationship or theory of liability," id. § 113.01[2]. The dual persona doctrine provides that "[a]n employer may become a third person, vulnerable to tort suit by an employee, if—and only if—it possesses a second persona so completely independent from and unrelated to its status as employer that by established standards the law recognizes that persona as a separate legal person." Id. § 113.01[1].

Applying that principle, several courts have permitted plaintiffs to pursue tort claims against their employers in circumstances analogous to this case: where the employee is injured by a product manufactured by a company that had merged with the defendant-employer before the accident. See, e.g., Billy v. Consol. Mach. Tool Corp., 412 N.E.2d 934, 939–40 (N.Y. 1980); Schweiner v. Hartford Acct. & Indem. Co., 354 N.W.2d 767, 772–73 (Wis. Ct. App. 1984); Kimzey v. Interpace Corp. Inc., 694 P.2d 907, 912 (Kan. Ct. App. 1985). In applying the dual persona doctrine, these courts recognize that had the corporate merger not taken place the plaintiff would have had the right to maintain an action against the manufacturing company as a third-party tortfeasor. See Billy, 412 N.E.2d at 939; see also Mitchell v. Sanborn, 536 N.W.2d 678, 683 (N.D. 1995) (noting that North Dakota workers' compensation law "authorizes an injured employee to sue third persons for injuries 'sustained under circumstances creating in some person other than the [workers' compensation] fund a legal liability to pay damages in respect thereto'" (quoting N.D. Cent. Code § 65-01-09)). Furthermore, they acknowledge that the surviving entity of a corporate merger succeeds to the liabilities and obligations of the merging companies. See Billy, 412 N.E.2d at 940; see also N.D. Cent. Code § 10-19.1-102(f) ("The surviving organization [of a merger] is responsible and liable for all the liabilities and obligations of each of the constituent organizations."). By permitting an employee to sue their employer in such circumstances, these courts recognize that the employer is being sued in its legal persona as the successor to liabilities, separate from its legal persona as an employer. See Billy, 412 N.E.2d at 940 ("Conceptually, [the plaintiff] is suing not the [plaintiff's] former employer, but rather the successor to the liabilities of the [merged entities].").

My best prediction is that the North Dakota Supreme Court would apply the dual persona exception to the exclusive remedy rule in this case. See Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010) ("If the highest state court has not decided an issue we must attempt to predict how the highest court would resolve the issue . . . ."). Although it did not adopt the dual capacity doctrine in Latendresse, it left open the possibility for an exception to the exclusive remedy rule where the employer has a "distinct separate legal persona." 290 N.W.2d at 271

-11-

(cleaned up). That is exactly the case here, as Scott brings the current action against Key Energy not as his employer but as the successor to Hydra-Walk's liabilities. Such an application of the dual persona doctrine, significantly narrower than the dual capacity doctrine, would fall within the North Dakota Supreme Court's reasoning in Latendresse and would not require "disregard[ing] or do[ing] violence to several provisions of the North Dakota Workmen's Compensation Act." 290 N.W.2d at 271–72.

I respectfully dissent.

_____